# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| | : | |
| **ELLEN HICKS and JAMIE SHERMAN,** | : | **Civil Action No.: 3:21-cv-589** |
| **individually and on behalf of all persons** | : | |
| **similarly situated,** | : | **Complaint — Collective Action** |
| | : | |
| **Plaintiffs,** | : | **Jury Trial Demanded** |
| | : | |
| **v.** | : | |
| **DIRECT HIT LOGISTICS, INC., and DHL** | : | |
| **EXPRESS (USA) INC. d.b.a. DHL** | : | |
| **EXPRESS,** | : | |
| | : | |
| **Defendants.** | : | |

## COLLECTIVE ACTION COMPLAINT

Plaintiffs Ellen Hicks and Jamie Sherman ("Plaintiffs"), through their undersigned counsel, individually, and on behalf of all persons similarly situated, file this Collective Action Complaint ("Complaint") against Defendants Direct Hit Logistics, Inc. ("DIRECT HIT") and DHL Express (USA) Inc. d.b.a. DHL Express ("DHL") (collectively, "Defendants") seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## INTRODUCTION

1.      Defendant DIRECT HIT provides last-mile delivery services to Defendant DHL.

2.      Defendants jointly employ non-exempt Courier Drivers, such as Plaintiffs and members of the proposed Collective, to transport packages from DHL's facilities to DHL's customers ("Courier Drivers").

3.      This case is about Defendants' failure to comply with applicable wage and hour laws

and to pay non-exempt Courier Drivers for all time worked – including overtime – as was required to deliver hundreds of DHL packages each day and meet DHL's delivery needs throughout North Carolina, Georgia, and potentially other states.

## JURISDICTION AND VENUE

4. Jurisdiction over Plaintiffs' FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants reside in and/or conduct business in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this Judicial District.

## PARTIES

6. Plaintiff Ellen Hicks is a citizen of Georgia and resides in East Point, GA. Plaintiff Hicks worked for Defendants as a Courier Driver in Atlanta, Georgia from approximately June 2020 to August 2020. Pursuant to 29 U.S.C. § 216(b), Plaintiff Hicks has consented to be a plaintiff in this action. *See* Ex. A.

7. Plaintiff Jamie Sherman is a citizen of South Carolina and resides in Pawley's Island, South Carolina. Plaintiff Sherman worked for Defendants as a Courier Driver in Charlotte, North Carolina from approximately April 2020 to June 2020. Pursuant to 29 U.S.C. § 216(b), Plaintiff Sherman has consented to be a plaintiff in this action. *See* Ex. A.

8. Defendant Direct Hit Logistics, Inc. ("DIRECT HIT") is a Florida corporation and is headquartered in Doral, FL. DIRECT HIT operates throughout the United States and maintains facilities across Georgia and North Carolina including, without limitation, in Charlotte, NC.

9. Defendant DHL Express (USA) Inc. d.b.a. DHL Express ("DHL") is an Ohio corporation and is headquartered at DHL's corporate office in Plantation, FL. DHL operates

throughout the United States and maintains facilities across Georgia and North Carolina including, without limitation, in Charlotte, NC.

10.     The unlawful acts alleged in this Complaint were committed by Defendants and/or Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of the Defendants.

11.     During times relevant, Plaintiffs were employees of the Defendants and are covered by the FLSA.

12.     Defendants are employers covered by the FLSA.

13.     Defendants employ individuals, including Courier Drivers, in Georgia, North Carolina, and potentially other states.

14.     Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as described by 29 U.S.C. §§ 206-207.

15.     Defendants' annual gross volume of sales exceeds $500,000.

## COLLECTIVE DEFINITION

16.     Plaintiffs Hicks and Sherman bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action, individually, and on behalf of the following collective:

> All current and former Courier Drivers or delivery drivers who were paid by Defendant DIRECT HIT to deliver packages for DHL in the United States during the applicable limitations period (the "FLSA Collective" or "Courier Drivers").

17.     Plaintiffs reserve the right to redefine the Collective prior to notice or certification, and thereafter, as may be warranted or necessary.

## FACTS

### Defendants Are Joint Employers Who Employed Plaintiffs and the Courier Drivers

18.    Defendant DHL is the world's leading delivery company, with a team of shipping professionals that transport goods to customers across the United States, as well as in other countries and territories, in a short period of time.

19.    Defendant DHL holds itself out as a company able to provide domestic and international parcel pickup, delivery, and return solutions for business customers and individual customers, as well as e-commerce solutions and facilitation services.

20.    Defendant DHL and the local and regional delivery vendors it partners with, such as Defendant DIRECT HIT, are in the business of delivering goods across the United States.

21.    Defendant DHL utilizes local and regional delivery vendors, such as DIRECT HIT, to transport goods across the country to customers in a short period of time.

22.    Defendant DHL relies on local and regional delivery vendors, such as DIRECT HIT, for the essential services of transporting goods from DHL facilities to customers' doors as quickly as possible.

23.    The local and regional delivery vendors, such as DIRECT HIT, are an integral part of DHL's business. Without the use of delivery vendors, such as DIRECT HIT, DHL could not get their goods to customers.

24.    Defendant DHL attempts to shield itself from liability by utilizing third-party delivery vendors, such as DIRECT HIT, to provide the employees to transport their goods.

25.    During the applicable time period, Defendant DIRECT HIT provides delivery services for Defendant DHL at one or more of DHL's ServicePoint locations through the use of Courier Drivers such as Plaintiffs and members of the proposed Collective.

4

Case 3:21-cv-00589-RJC-DCK    Document 1    Filed 11/01/21    Page 4 of 15

26. Courier Drivers are engaged to fulfill DHL's delivery needs and to transport goods from DHL ServicePoint locations to DHL customers.

27. Courier Drivers work in the transportation industry.

28. Courier Drivers are not required to have a commercial driver's license as a condition of employment.

29. Courier Drivers drive vehicles that weigh less than 10,001 pounds.

30. As required by DHL, DIRECT HIT provides Courier Drivers, such as Plaintiffs and other Courier Drivers, with a DHL-branded vehicle, as seen below:



31. The goods that Courier Drivers transport from DHL ServicePoint locations to DHL customers originate, or are transformed into their final condition, in a different state than the delivery state.

32. The goods the Courier Drivers transport from DHL ServicePoint locations to DHL customers are not transformed or modified during the shipping process.

33. Courier Drivers deliver goods to DHL customers in the same condition as when

5

they were shipped to the DHL ServicePoint.

34.    Courier Drivers deliver goods to DHL customers that were shipped from around the United States.

35.    Courier Drivers handle goods that travel interstate.

36.    Courier Drivers are directly responsible for transporting goods in interstate commerce.

37.    Courier Drivers operate vehicles in order to deliver DHL packages, which is vital to the commercial enterprise of the local and regional delivery vendors and DHL.

38.    A strike by Courier Drivers would disrupt interstate commerce.

39.    Plaintiffs and other Courier Drivers are necessary in order for DHL goods traveling interstate to make it to their final destination – DHL customers.

40.    At all times relevant, DHL has been affiliated with and/or operating with DIRECT HIT, with respect to Plaintiffs and other similarly situated employees, such that DHL and DIRECT HIT are "joint employers" of Plaintiffs and other similarly situated employees.

41.    Courier Drivers for the local and regional delivery vendors, including DIRECT HIT, are required to wear DHL-branded uniforms while making deliveries and are further equipped with DHL-branded badges.

42.    When Courier Drivers present themselves to DHL customers, they are identifiable as DHL associates.

43.    Courier Drivers are provided with a DHL-issued handheld scanner. The handheld scanner is used for navigation assistance, package scanning, and as a phone. The scanner allows DHL to contact and track a Courier Driver's movement and work progress.

44.    DHL has direct access to the handheld scanners, which are given to and used by

6

each Courier Driver.

45.    DHL sets the delivery routes that are to be completed by Courier Drivers.

46.    DHL assigns and provides routes to local and regional delivery vendors, including DIRECT HIT.

47.    DHL oversees and controls the work activities, work schedules, conditions and management of Courier Drivers.

48.    At all relevant times that DHL has been affiliated with and/or operated with DIRECT HIT with respect to Plaintiffs and other similarly-situated employees, DHL and DIRECT HIT have acted as "joint employers" of Plaintiffs and other similarly-situated employees

49.    Throughout their employment with Defendants, Courier Drivers are required to comply with DHL's operational procedures and in meeting DHL's work expectations.

50.    Although DHL does not directly pay Courier Drivers, its policies and expectations regarding payment and delivery goals dictated the delivery vendors' ability to pay Courier Drivers properly for their overtime work.

51.    Plaintiff Hicks was hired on or around July 2018 and worked as a Courier Driver for DIRECT HIT until on or around April 2020 in one of DHL's Georgia ServicePoints, making deliveries on behalf of DHL.

52.    Plaintiff Hicks worked out of DHL's ServicePoint located at 644 Lake Mirror Road, Atlanta, GA 30349.

53.    Plaintiff Sherman was hired on or around September 2017 and worked as a Courier Driver for DIRECT HIT until on or around April 2020 in one of DHL's North Carolina ServicePoints, making deliveries on behalf of DHL.

54.    Plaintiff Sherman worked out of DHL's ServicePoint located at 5032 Sirona Drive,

Charlotte, NC 28273.

## The Nature of Plaintiffs' and Other Courier Drivers' Work

55.     The nature of the work performed by Courier Drivers is similar and standardized at each of the DHL ServicePoints where DIRECT HIT provides services for DHL, as the nature of the work is centrally controlled and directed by Defendants.

56.     Plaintiffs and other Courier Drivers began their shifts at a designated DHL ServicePoint, where they picked up their assigned van, a handheld scanning device, a route sheet, and packages.

57.     Plaintiffs and other Courier Drivers were regularly required to clock-in at the DHL ServicePoint at approximately 6:00 am on Monday mornings.

58.     On all other weekdays, excluding Mondays, Plaintiffs and other Courier Drivers were regularly required to clock-in at the DHL ServicePoint at their scheduled shift start time.

59.     Plaintiffs and other Courier Drivers were prohibited from clocking in at any time preceding their scheduled shift start times, regardless of whether they began working prior to that time.

60.     At the end of their shifts, Plaintiffs were required to record the time that they debriefed as their "clock-out" time. Plaintiffs observed that other Courier Drivers were also subject to the same practice.

61.     After Plaintiffs recorded their clock-out time, Plaintiffs were still required to park their van in the lot, check out with the dispatcher, and turn in their keys and scanner. The time that Plaintiffs spent performing these tasks while off-the-clock was unrecorded and uncompensated. Plaintiffs observed that other Courier Drivers were also subject to the same practice.

62.     Defendants were aware or should have been aware that the pre- and post-shift work

8

performed by Plaintiffs and other Courier Drivers was compensable and should have been recorded.

63.     Plaintiffs observed that other Courier Drivers were also subject to the same policies and practices. Defendants were not only aware of and permitted these practices, but the work schedules and conditions imposed by Defendants effectively required these practices.

64.     Plaintiffs and other Courier Drivers were regularly scheduled to work five (5) to six (6) days per week, with shifts that exceeded twelve (12) hours in length.

65.     Upon information and belief, Plaintiffs and other Courier Drivers were required to complete all assigned routes regardless of the length of their shifts.

66.     Upon information and belief, all of the work-related activities that Plaintiffs and other Courier Drivers are and/or were required to and do perform often took twelve (12) or more hours per day to complete.

67.     Plaintiffs regularly worked in excess of forty (40) hours per week. Plaintiffs observed that other Courier Drivers routinely worked similar hours.

68.     Defendants unilaterally selected the parcels and the quantity to be delivered. Plaintiffs and other Courier Drivers could not reject delivery assignments.

69.     Due to the volume of work, Plaintiffs routinely worked through their meal periods. Plaintiffs observed that other Courier Drivers routinely worked through their meal periods.

70.     Plaintiffs observed that other Courier Drivers routinely worked similar schedules. Defendants were not only aware of and permitted this practice, but the work schedules and conditions imposed by Defendants effectively required this practice.

71.     Plaintiffs and other Courier Drivers are non-exempt for overtime purposes.

**Defendants Failed to Pay Courier Drivers Properly**

72.     The FLSA generally requires an employer, such as Defendants, to compensate

9

employees for hours worked in excess of forty (40) hours "at a rate not less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1).

73.     Plaintiffs and other Courier Drivers regularly worked five (5) to six (6) days per week.

74.     Plaintiffs and other Courier Drivers regularly worked more than forty (40) hours per week.

75.     Defendants were aware that Plaintiffs and other Courier Drivers worked more than forty (40) hours per week.

76.     Plaintiffs regularly worked sixty (60) to seventy-five (75) hours per week. Plaintiffs observed that other Courier Drivers routinely worked a similar number of hours.

77.     Defendants did not compensate Plaintiffs and other Courier Drivers for all hours worked.

78.     Defendants did not pay Plaintiffs or other Courier Drivers for all hours worked in excess of forty (40) hours in a workweek and did not pay proper overtime premiums.

79.     Throughout the course of Plaintiffs' employment, Plaintiffs routinely worked through their meal break periods without compensation, due to the sheer volume of deliveries assigned to them and in order to meet the work expectations set forth by Defendants. Furthermore, Plaintiffs were unable to take short rest breaks throughout their workdays in order to meet work expectations. Plaintiffs observed that other Courier Drivers also routinely worked through their rest breaks and meal breaks, without compensation, due to their strenuous work loads and in order to meet the expectations set forth by Defendants.

80.     Plaintiffs and other Courier Drivers were not provided meal breaks. Accordingly, Plaintiffs and other Courier Drivers routinely worked through meal breaks without proper

10

compensation, such as overtime compensation. Defendants were not only aware of and permitted this practice, but the work schedules and conditions imposed by Defendants effectively required this practice.

81. Despite Plaintiffs' inability to take meal breaks, Defendants automatically deducted one (1) hour from each shift worked for a meal break, regardless of whether Plaintiffs actually took a break during their workdays. Plaintiffs observed that other Courier Drivers were also made subject to the same practice.

82. Defendants were aware that Plaintiffs and other Courier Drivers were not compensated properly for working through their breaks, including overtime compensation.

83. Defendants did not accurately record and track all of the hours worked by Plaintiffs and other Courier Drivers and therefore failed to compensate Plaintiffs and the putative collective action members at one and one-half (1 ½) times the regular rate of pay for hours worked over forty (40) hours in a workweek.

84. Plaintiffs and Courier Drivers were not paid for all hours worked and were not paid overtime, as required by law.

**The Failure to Properly Pay Courier Drivers Is Willful**

85. Defendants' actions in violation of the FLSA were or are made willfully in an effort to avoid liability under the FLSA.

86. Even though the FLSA requires overtime premium compensation for hours worked over forty (40) hours per week, Defendants do not pay Courier Drivers, such as Plaintiffs, proper overtime compensation for overtime hours worked.

87. Defendants are on notice of their FLSA obligations.  In particular, DIRECT HIT has been previously sued for substantially similar allegations as in this Complaint. *See Hamilton, et al.*

11

*v. Direct Hit Logistics, Inc., et al.*, No. 4:09-cv-00520 (S.D. Tex.) (FLSA lawsuit on behalf of couriers drivers for unpaid overtime compensation); *Davis v. Direct Hit, Inc., et al.*, No. 0:09-cv-60090-WJZ (S.D. Fla.) (same).

88.     Defendants knew, or absent their own recklessness should have known, that the Courier Drivers were entitled to such overtime premiums.

89.     Defendants knew, or absent their own recklessness should have known, that the Courier Drivers were entitled to compensation for all time worked.

90.     Defendants failed to pay Plaintiffs and other Courier Drivers all compensation owed, including overtime premiums.

91.     By failing to pay all the compensation owed to Plaintiffs and other Courier Drivers, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

92.     Defendants have not made good faith efforts to comply with the FLSA.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

93.     Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

94.     Plaintiffs desire to pursue their FLSA claims on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

95.     Plaintiffs and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendants' previously described common pay practices and, as a result of such practices, were not paid for all hours worked and were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping and payroll practices.

12

96.     Specifically, Defendants failed to compensate Plaintiffs for all hours worked and failed to pay overtime at time and a half (1½) the employee's regular rate as required by the FLSA for hours worked in excess of forty (40) per workweek.

97.     The similarly situated employees are known to Defendants and are readily identifiable and may be located through Defendants' business records and the records of any payroll companies Defendants use.

98.     Defendants employ many FLSA Collective Members throughout Georgia, North Carolina, and potentially other states. These similarly situated employees may be readily notified of the instant litigation through direct means, such as U.S. mail and/or other appropriate means, and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime and other compensation violations, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## COUNT I
### Violation of the Fair Labor Standards Act
### (On Behalf of Plaintiffs and the FLSA Collective)

99.     All previous paragraphs are incorporated as though fully set forth herein.

100.    The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he or she is employed.  *See* 29 U.S.C. § 207(a)(1).

101.    Defendants are subject to the wage requirements of the FLSA because each of the Defendants is an "employer" under 29 U.S.C. § 203(d).

102.    At all relevant times, each of the Defendants was an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

13

103. During all relevant times, Plaintiffs and Collective Members were covered employees entitled to the above-described FLSA protections. *See* 29 U.S.C. § 203(e).

104. Plaintiffs and Collective Members are not exempt from the requirements of the FLSA.

105. Plaintiffs and Collective Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

106. Defendants knowingly failed to properly compensate Plaintiffs and Collective Members for all hours worked when they worked in excess of forty (40) hours per week and failed to pay proper overtime premiums at a rate of one and one-half (1 ½) times their regular hourly wage, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

107. Defendants also failed to create, keep, and preserve accurate records with respect to work performed by the Plaintiffs and Collective Members sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA, 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

108. In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

109. Pursuant to 29 U.S.C. § 216(b), employers such as Defendants, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all others

similarly situated:

   a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

   b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

   c. Back pay damages (including unpaid overtime compensation and unpaid wages) as may be owed and prejudgment interest to the fullest extent permitted under the law;

   d. Liquidated damages to the fullest extent permitted under the law;

   e. Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

   f. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury for all issues of fact.

Dated: November 1, 2021     Respectfully submitted,

          /s/ Jeffrey L. Osterwise
          Jeffrey L. Osterwise (NC Bar No. 39272)
          Camille Fundora Rodriguez, *pro hac vice forthcoming*
          Alexandra K. Piazza, *pro hac vice forthcoming*
          Reginald Streater, *pro hac vice forthcoming*
          **BERGER MONTAGUE PC**
          1818 Market Street, Suite 3600
          Philadelphia, PA 19103
          Tel.: (215) 875-3000
          Fax: (215) 875-4620
          josterwise@bm.net
          crodriguez@bm.net
          apiazza@bm.net
          rstreater@bm.net

          *Attorneys for Plaintiffs and the Proposed Collective*